[Crim. No. 44475. Second Dist., Div. Five. July 19, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMIE JUAREZ, Defendant and Appellant.

Counsel

Quin Denvir and Frank O. Bell, Jr., State Public Defenders, under appointment by the Court of Appeal, and Nancy Ann Stoner, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert R. Anderson, and Christine C. Franklin, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

ASHBY, J.—By amended information appellant and other defendants were charged with conspiracy to commit murder, attempted murder, kidnaping for ransom or extortion with bodily harm, and assault by means of force likely to produce great bodily injury and with a deadly weapon. As to each

offense it was alleged that appellant used a firearm and inflicted great bodily injury. Appellant pleaded nolo contendere to conspiracy to commit first degree murder, simple kidnaping, use of a firearm and infliction of great bodily injury. He was sentenced to a state prison term of 28 years to life.[1] ▮ He appeals, contending only that the term prescribed by law for his admitted offense is excessive, in violation of the California constitutional prohibition against cruel or unusual punishment. (Cal. Const., art. I, § 17. See *People* v. *Dillon* (1983) 34 Cal.3d 441, 477 [194 Cal.Rptr. 390, 668 P.2d 697]; *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921].) This contention is without merit.

Appellant's plea precluded a full trial of the facts, but the circumstances of the crime as indicated by the preliminary hearing and probation officer's report reveal that appellant was not only the actual shooter, but the leader and decisionmaker in an attempted premeditated and cold-blooded execution, which failed when the victim survived his wounds.

The victim, Blaise Ponticello, was an innocent bystander at the wrong place at the wrong time. The victim's brother, Gerald Ponticello, cheated several codefendants in a drug deal by purchasing a large amount of marijuana without paying for it. When Blaise Ponticello returned to his home the evening of January 1, 1982, unaware of what Gerald had done, he was kidnaped by codefendants for the purpose of compelling disclosure of Gerald's whereabouts. The victim was transported to various locations, sometimes in the trunk of a car, and was robbed, repeatedly beaten, and threatened at knife point with death if he did not reveal Gerald's whereabouts.

Sometime before dawn the victim was taken to a motel room. Between these early morning hours and the early afternoon of January 2, several phone calls were made to the victim's parents, threatening that codefendants wanted Gerald, their marijuana, and their money, or Blaise would be killed or injured.

Codefendant Garcia left the motel room to make a phone call, and when he returned he was accompanied by appellant and appellant's brother Manny. Appellant and codefendant Garcia left 15 minutes later, again purportedly to make a telephone call. When they returned 30 to 45 minutes later, appellant announced that the victim's parents had called the police, so

---

[1]At the time of the plea appellant understood that he was to "receive a sentence of 30 years to life," consisting of a base term of 25 years to life plus 2 years for firearm use plus 3 years for great bodily injury. Subsequently this was reduced to 28 years to life, presumably because of Penal Code section 1170.1, subdivision (e).

"waste him." Codefendant Estrada wrapped a pillow around a German luger pistol as if he were going to shoot the victim immediately, but someone said it would make too much noise so they left the motel. Appellant and codefendants Estrada, Miranda, and Manny Juarez took the victim in one vehicle; codefendants Squyers and Garcia followed in another. The two cars drove down a street and stopped on appellant's orders. Garcia and Manny Juarez had an argument. Appellant yelled at Manny not to go, but Manny obtained a gun from Garcia and did not obey.

At appellant's directions, the cars drove to Azusa Canyon. At Azusa Canyon Road, appellant and Manny walked the victim into a ravine about 50 feet from the cars. Manny had a .25 caliber handgun obtained from Garcia, and appellant had the German luger pistol. Appellant and Manny traded guns. At appellant's direction the victim turned and got on his knees. The victim was shot three times in the back, shoulder, and arm. He fell to the ground and was left, but survived and crawled to rescue.

Appellant's basic complaint is that upon his conviction of conspiracy to commit murder appellant was punished as severely as if the victim had died and appellant had been convicted of first degree murder. Appellant contends that since the victim did not die, appellant's sentence should be less than that for first degree murder. There are several flaws in appellant's argument.

First, the Legislature has specifically provided that the penalty for conspiracy to commit murder is the same as that prescribed for murder in the first degree. (Pen. Code, § 182; *In re Boyle* (1974) 11 Cal.3d 165, 168 [113 Cal.Rptr. 99, 520 P.2d 723].) ■ Appellant refers to the "proportionality" of his sentence, but it is the function of the Legislature to define crimes and fix punishments, thus determining the proportionality of different crimes. The Legislature has leeway in choosing penalties in light of the evils to be corrected, the weighing of practical alternatives, considerations of relevant policy factors, and responsiveness to the public will. A court may not conclude a punishment is constitutionally excessive under the cruel or unusual punishment clause, unless the punishment is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. (*People* v. *Dillon, supra,* 34 Cal.3d at p. 478; *In re Lynch, supra,* 8 Cal.3d at pp. 423-424.) Analyzing Penal Code section 182 under the three-pronged test of *In re Lynch, supra*, the Court of Appeal recently upheld, against a challenge on cruel or unusual punishment grounds, the statutory punishment for conspiracy to commit murder. (*People* v. *Williams* (1980) 101 Cal.App.3d 711, 720-724 [161 Cal.Rptr. 830].)

 Appellant contends that conspiracy, like felony-murder, may encompass a wide range of involvement and culpability, and that under an analysis similar to *People* v. *Dillon, supra,* involving the felony-murder rule, appellant's punishment was constitutionally disproportionate to the nature of the offense or of the offender. This argument is unpersuasive on the facts of appellant's case.

The record indicates that appellant was the leader and decisionmaker in the determination that the victim should be executed because the police had been called into the kidnaping. Appellant's actions and words, "waste him," reflected a fully premeditated and deliberated cold-blooded decision showing no respect for human life. Appellant led the other coconspirators in removing the victim to a ravine, shooting him, and leaving him to die. In light of the circumstances of the offense, it is not at all shocking to the conscience or offensive to fundamental notions of human dignity that appellant should suffer the punishment prescribed by law. In light of appellant's leadership role, it was appropriate for the prosecution to accept a plea of conspiracy to commit murder rather than one of attempted murder, as in the case of appellant's younger brother Manny. Nor does the nature of the offender compel a conclusion that the punishment is constitutionally excessive. Appellant was almost 26 years old and had not been in school since the tenth grade. Thus he was no immature youth as in *Dillon*. Although he had no significant prior record (a 1975 marijuana drug diversion case), he had not worked since July 1981, and his leadership exerted at the motel suggests possible involvement in the drug selling which precipitated this incident. Moreover, from the evidence of the premeditated and cold-blooded decision involved in the crime, it may be inferred as found by the probation officer that appellant poses a serious threat to the safety and welfare of others.

Finally, appellant's argument also assumes that his conviction should be compared to the crime of ordinary first degree murder (Pen. Code, § 190). This overlooks the fact that the penalty for conspiracy under Penal Code section 182 is *less* severe than for certain forms of murder or other crimes. Had the victim died, and had the case gone to trial, the prosecution might have charged or proven special circumstances (Pen. Code, § 190.2, subds. (a)(10), (17)(ii)), in which case the penalty would have been death or life imprisonment without possibility of parole. (See *People* v. *Williams, supra,* 101 Cal.App.3d at p. 723.) Appellant also overlooks the fact that he was actually charged in count III with kidnaping for ransom, reward or extortion, with the victim's having suffered bodily harm. Under Penal Code section 209, subdivision (a), the punishment on count III would have been life imprisonment without possibility of parole. (See *In re Maston* (1973) 33 Cal.App.3d 559, 565 [109 Cal.Rptr. 164]; *People* v. *Isitt* (1976) 55

Cal.App.3d 23, 31 [127 Cal.Rptr. 279].) By pleading nolo contendere to conspiracy to commit murder and to simple kidnaping instead, appellant avoided possible imprisonment for life without possibility of parole.[2] Under all the circumstances, appellant's sentence does not constitute cruel or unusual punishment.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 1, 1984.

---

[2]This also disposes of appellant's contention raised at oral argument, based on *People* v. *Courie** (Cal.App.), that by virtue of the enhancement for great bodily injury appellant actually received a longer term than he would have received for first degree murder had the victim died. His argument again erroneously assumes that ordinary first degree murder necessarily would have been the maximum sustainable charge had the victim died.

*Reporter's Note: Deleted on direction of Supreme Court by order dated July 19, 1984.